____ FILED ____ ENTERED
____ LOGGED ____ RECEIVED

11:02 am, Jul 17 2020

AT BALTIMORE
CLERK, U.S. DISTRICRT COURT
DISTRICT OF MARYLAND
BY _____Deputy

AUSA SIPPEL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE APPLICATIONS OF THE UNITED STATES OF AMERICA FOR SEARCH WARRANTS REQUIRING DISCLOSURE OF HISTORICAL CELLULAR INFORMATION | NOS. 1:20-mj-1671 TMD<br>1:20-mj-1672 TMD<br>1:20-mj-1673 TMD<br>1:20-mj-1674 TMD |

## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS
## REQUIRING DISCLOSURE OF HISTORICAL CELLULAR SITE INFORMATION

Ted Anderson, a Task Force Officer with the Federal Bureau of Investigation ("FBI") being duly sworn, states:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for search warrants for records and historical cellular site information associated with certain cellular towers ("cell towers") that is in the possession, custody, and/or control of AT&T, a cellular service provider headquartered at 11760 US Highway 1 Suite 600, North Palm Beach, Florida 33408; Sprint, a cellular service provider headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251; T-Mobile, a cellular service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054; and Verizon Wireless, a cellular service headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921 (collectively, the "Service Providers"). This affidavit is made in support of applications for search warrants under 18 U.S.C. § 2703(c)(1)(A) to disclose certain records and other information pertaining to the cellular telephone towers described in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A.

2. Your Affiant, Detective/FBI Task Force Officer Ted Anderson, has been a sworn member of the Baltimore City Police Department since April of 1997. Upon completing the Police Academy, your Affiant was assigned to the Northeast District Patrol Division. In July of 2001,

your Affiant was transferred and assigned to the Northeast District Detective Unit. While assigned to the Northeast District Detective Unit, your Affiant was tasked with investigating crimes pertaining to burglaries, robberies, aggravated assaults and non-fatal shootings.  In November 2003, your Affiant was transferred and assigned to the Citywide Robbery Unit within the Criminal Investigation Divisions. While assigned to the Citywide Robbery Unit, your Affiant was tasked with the investigation of Commercial Robberies, including Armed Commercial Robberies. In October of 2010, your Affiant was deputized by the U.S. Marshals Service and assigned to work with the FBI's Maryland Joint Violent Crime/Fugitive Task Force. Your Affiant's duties with the Task Force are to investigate Bank Robberies, Commercial Robberies and Armored Car Robberies to include Hobbs Act Cases.  During my tenure with the Baltimore City Police Department and the FBI Violent Crimes Task Force, your Affiant has attended various training classes to include yearly in-service training, criminal investigation training, interview and interrogation school, the recovered of DNA, cellphone data extraction and the FBI's Street Survival training. During this period, your Affiant has arrested numerous individuals for various crimes. Your Affiant has also prepared and executed numerous search and seizure warrants while with the Baltimore City Police Department and the FBI Violent Crimes Task Force. Your Affiant has testified in State and Federal Courts to include both State and Federal Grand Jury proceedings.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause for search warrants, I have not included every detail of every aspect of the investigation.  Rather, I have set forth only those facts that I believe are necessary to establish probable cause.  I have not, however, excluded any information known to me that would defeat a determination of probable cause.  The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses,

cooperating sources, telephone records, and reports. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1951 (Interference with Commerce by Robbery), were committed by the unknown subject described herein. There is also probable cause to believe that a search of the cell tower data as described below and in Attachment A will result in identification of the subject and the recovery of items constituting evidence of these criminal violations.

## **PROBABLE CAUSE**

5. The FBI and Baltimore Police Department ("BPD") are conducting an investigation of several armed commercial robberies that have occurred since June 13, 2020. I believe that these were committed by the same subject. A review of available video surveillance indicate that the robberies appear to be related based upon the description of the subject, articles of clothing worn, and the manner in which the robberies were committed.

6. On June 13, 2020, at approximately 3:00 a.m., the BPD received a 911 call for an armed robbery at the America Best Inn located at 6510 Frankford Avenue, Baltimore, Maryland 21206. Officers responded to the location and their investigation revealed that a suspect entered the business and asked for a cup. When the attendant went to give the suspect a cup, the suspect forced his way behind the counter. The suspect then produced a black handgun and demanded U.S. currency. The suspect stated, "I will pop you," meaning the suspect would shoot the attendant if the attendant did not comply. The attendant gave the suspect approximately $540.00 dollars in U.S. currency. Prior to exiting the location, the suspect ordered the attendant to get on the ground.

The suspect then fled the location in an unknown direction. The male was described as a black male, 6'4" in height, thin build and wore a black mask, gray hoodie sweatshirt, and blue pants.

      7.      On June 18, 2020, at approximately 1:05 p.m., the BPD received a 911 call for an armed robbery at the Hip Hop Chicken & Carry-Out located at 901 N. Caroline Street, Baltimore, Maryland 21205. BPD Officers responded to the location and their investigation revealed that a suspect entered the Hip Hop Chicken and stated he was there to pick up a food order. An employee turned to get the pick-up order from behind the counter. Once the employee returned to the cash register with the pick-up food order, the suspect produced a black handgun and demanded U.S. currency. The employee gave the suspect approximately $100.00 dollars in U.S. currency. The suspect then fled the location on foot. The suspect was described as a black male, approximately 6'1" in height, young in age, and wore a black mask, black hoodie sweatshirt with the hood pulled up, black shorts, and white and black tennis shoes.

      8.      On June 18, 2020, at approximately 10:04 p.m., the BPD received a 911 call for an armed robbery at the 7-Eleven located at 300 W. Baltimore Street, Baltimore, Maryland 21201. Officers responded to the location and their investigation revealed that a suspect entered the 7-Eleven Store and pulled an unknown caliber black handgun from his waistband. The suspect then demanded for U.S. currency. The employee complied and gave the male approximately $500.00 dollars in U.S. currency. Before the suspect exited the location he ordered the employees to get on the ground. The suspect was described as a black male, 6' in height, and wore a black mask, black "Under Amour" hoodie, gray pants, and black tennis shoes with white soles.

      9.      On June 18, 2020, at approximately 10:43 p.m. the BPD received a 911 call for an armed robbery at Billy's Pizza and Wings located at 5005 Erdman Avenue, Baltimore, Maryland 21205. Officers responded and their investigation revealed that a suspect entered the carryout and

appeared to be looking at the menu. An employee was at the counter and on the phone taking a food order. The suspect approached the employee and stated, "Hang up the phone before I pop you." The employee thought the suspect was joking until the suspect displayed a black handgun and ordered the employee to put down the phone. The suspect then went behind the counter and demanded U.S. currency. The employee complied and gave the suspect approximately $296.00 dollars in U.S. currency.  Prior to the suspect leaving the location, the suspect ordered all of the employees to go to a back room.  The suspect then exited the location and was seen entering a small sized SUV-style vehicle.  The suspect was described as a black male wearing a black mask, black "Under Amour" hoodie sweatshirt, gray pants, and dark colored tennis shoes with white soles.

10. On June 18, 2020, at approximately 11:09 p.m., the BPD received a 911 call for an armed robbery at the Royal Farms Store located at 6311 Eastern Avenue, Baltimore, Maryland 21224.  Officers responded to the location and their investigation revealed that a suspect entered the Royal Farms Store and asked to buy a pack of cigarettes.  An employee turned to get the cigarettes from the display and turned around to see the suspect displaying a black handgun.  The suspect then demanded U.S. currency.  The employee complied and gave the suspect approximately $200.00 dollars in U.S. currency.  The suspect left the location on foot.  The suspect was described as a black male, 6'3" in height, thin build, and wore a black mask, dark gray hoodie sweatshirt, light gray pants, and gray tennis shoes.

11. Based on the foregoing facts, your affiant believes the information requested in the search warrants can assist in identifying the subject and as evidence in court for the crime of Interference with Commerce by Robbery and associated firearms offenses.

1:20-mj-1671 to -1674 TMD

## FACTS ABOUT CELL TOWERS IN GENERAL

12. Many cellular service providers maintain antenna towers ("cell towers") that serve specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. These cell towers allow the wireless devices to transmit or receive communications, such as phone calls, text messages, and other data. The tower closest to a wireless device does not necessarily serve every call made to or from that device.

13. In addition to a unique telephone number, each cell phone is identified by one or more unique identifiers. Depending on the cellular network and the device, the unique identifiers for a cell phone could include an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").

14. Cellular service providers routinely maintain historical cell-tower log information, including records identifying the wireless telephone calls and communications that used a particular tower. For each communication, these records may include the telephone call number and unique identifiers for the wireless device in the vicinity of the tower that made or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served device; and the type of communication transmitted through the tower (such as phone call or text message).

1:20-mj-1671 to -1674 TMD

## PURPOSE OF THE SEARCH

15. Based on the factual circumstances and chronology of the armed commercial robberies discussed above, it is likely that the subject's mobile device(s) would have used the towers that served the areas near the locations of the armed commercial robberies. Identifying a mobile device that used those towers on the specified dates and times would lead to the identification of the subject. Each of the subject's mobile devices would have a unique telephone number and Electronic Serial Number ("ESN"), which is registered to a respective carrier. The carrier would have identifying subscriber information, which can be used to identify the individual utilizing a specific mobile device. Upon identification of a mobile device, your affiant will obtain a subpoena to obtain the subscriber information from the respective carrier to further the investigation.

## REQUEST FOR A SEARCH WARRANTS

16. Given the facts set forth above, your affiant has probable cause to believe the records described in Attachment A would identify which wireless devices were in the immediate vicinity of the addresses listed in Attachment A around the time of the armed commercial robberies discussed above. This information, in turn, will assist law enforcement in determining the wireless device(s) utilized by the subject(s).

17. WHEREFORE, I respectfully request that the Court issue warrants authorizing members of the FBI, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to analyze the records, as described in Attachment A, for the purpose of identifying the individual responsible for the armed commercial robberies described above.

1:20-mj-1671 to -1674 TMD

*Task Force Officer Ted Anderson*
_____
Ted Anderson
Task Force Officer
Federal Bureau of Investigation

      Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on this __30__ day of __June__ 2020.

_____
THOMAS M. DiGIROLAMO
UNITED STATES MAGISTRATE JUDGE

8

# ATTACHMENT A

## I.  The Cell Towers

This warrant applies to certain records and information associated with cellular telephone towers ("cell towers") that provide coverage to the following areas at the listed date and times:

| Location | Date | Times |
|---|---|---|
| 6510 Frankford Avenue, Baltimore Maryland 21206 (Latitude: 39.313590 Longitude: -76.540780) | June 13, 2020 | 2:40 a.m. to 3:10 p.m. (EDT) |
| 901 N. Caroline Street Baltimore, Maryland 21205 (Latitude: 39.300940 Longitude: -76.597540) | June 18, 2020 | 12:45 p.m. to 1:15 p.m. (EDT) |
| 300 W. Baltimore Street Baltimore, Maryland 21201 (Latitude: 39.289390 Longitude: -76.619430) | June 18, 2020 | 9:45 p.m. to 10:15 p.m. (EDT) |
| 5005 Erdman Avenue Baltimore, Maryland 21205 (Latitude: 39.305750 Longitude: -76.557990) | June 18, 2020 | 10:30 p.m. to 11:00 p.m. (EDT) |
| 6311 Eastern Avenue Baltimore, Maryland 21224 (Latitude: 39.287480 Longitude: -76.540080) | June 18, 2020 | 10:30 p.m. to 11:00 p.m. (EDT) |

## II.  Records and Other Information to Be Disclosed

For each cell tower described in Part I of this Attachment, the Service Providers named in the Search Warrant are required to disclose to the United States all records and other information

(not including the contents of communications) about all communications made using the cell tower during the corresponding timeframe(s) listed in Part I, including the records that identify:

    A.    the telephone call number and unique identifiers for each wireless device in the vicinity of the tower ("the locally served wireless device") that registered with the tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

    B.    the source and destination telephone numbers associated with each communication (including the number of the locally served wireless device and the number of the telephone that called, or was called by, the locally served wireless device);

    C.    the date, time, and duration of each communication;

    D.    the "sectors" (i.e. the faces of the towers) that received a radio signal from each locally served wireless device; and

    E.    the type of communication transmitted through the tower (such as phone call or text message).

These records should include records about communications that were initiated before or terminated after the specified time period, as long as part of the communication occurred during the relevant time period identified in Part I.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by [Provider], and my official title is _____. I am a custodian of records for [Provider]. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of [Provider], and that I am the custodian of the attached records consisting of _____ (pages/DVDs/terabytes). I further state that:

- a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;
- b. such records were kept in the ordinary course of a regularly conducted business activity of [Provider]; and
- c. such records were made by [Provider] as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____      _____
Date                                Signature